﻿Citation Nr: AXXXXXXXX
Decision Date: 06/16/20 Archive Date: 06/16/20

DOCKET NO. 190427-12086
DATE: June 16, 2020

ORDER

A disability rating greater than 50 percent for posttraumatic stress disorder (PTSD) is denied.

A disability rating greater than 20 percent for lumbar strain is denied.

A compensable disability rating for verrucae vulgaris is denied.

Service connection for fibromyalgia is granted.

Service connection for chronic fatigue syndrome (CFS) is granted.

Service connection for irritable bowel syndrome (IBS), also claimed as functional abdominal pain syndrome and bloating, is granted.

Service connection for tremors of the hands is granted.

Service connection for restless leg syndrome (RLS) is granted.

Service connection for weakness and lack of coordination of the right leg is granted.

Service connection for weakness and lack of coordination of the left leg is granted.

Service connection for sleep apnea is granted.

Service connection for major depressive disorder is denied.

REMANDED

The claim of entitlement to service connection for chronic rhinitis and/or sinusitis is remanded.

FINDINGS OF FACT

1. Throughout the appeal period, the Veteran’s PTSD has been manifested by no more than occupational and social impairment with reduced reliability and productivity due to such symptoms such as: depressed mood; anxiety; suspiciousness; panic attacks more than once a week; chronic sleep impairment; mild memory loss, such as forgetting names, directions, or recent events; flattened affect; difficulty in understanding complex commands; impaired judgments; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships; difficulty adapting to stressful circumstances, including work or a work like setting; intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene.

2. Throughout the appeal period, the evidence has not shown limitation of flexion of the lumbosacral spine to less than 30 degrees.

3. Throughout the appeal period, the Veteran’s verrucae vulgaris has been in remission and productive of no limitation of function.

4. Resolving all doubt in the Veteran’s favor, the Veteran has fibromyalgia which has been related to his military service.

5. Resolving all doubt in the Veteran’s favor, the Veteran has CFS which has been related to his military service.

6. Resolving all doubt in the Veteran’s favor, the Veteran has IBS which has been related to his military service.

7. Resolving all doubt in the Veteran’s favor, the Veteran has tremors of the hands which has been related to his military service.

8. Resolving all doubt in the Veteran’s favor, the Veteran has RLS which has been related to his military service. 

9. Resolving all doubt in the Veteran’s favor, the Veteran has weakness and lack of coordination of the right leg which has been related to his military service.

10. Resolving all doubt in the Veteran’s favor, the Veteran has weakness and lack of coordination of the left leg which has been related to his military service.

11. The Veteran has a current diagnosis of sleep apnea which has been related to his military service.

12. While the Veteran contends that he experiences depression, the probative medical evidence does not support a separately diagnosed disability of major depressive disorder.

CONCLUSIONS OF LAW

1. The criteria for a disability rating greater than 50 percent for PTSD have not been met. 38 U.S.C. § 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code (DC) 9411.

2. The criteria for a disability rating greater than 20 percent for lumbar strain have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 4.7, 4.71a, DC 5237.

3. The criteria for a compensable disability rating for verrucae vulgaris have not been met. 38 U.S.C. § 1155; 38 C.F.R. § 4.118, DC 7819.

4. The criteria for service connection for fibromyalgia have been met. 38 U.S.C. §§ 1110, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

5. The criteria for service connection for CFS have been met. 38 U.S.C. §§ 1110, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

6. The criteria for service connection for IBS have been met. 38 U.S.C. §§ 1110, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

7. The criteria for service connection for tremors of the hands have been met. 38 U.S.C. §§ 1110, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

8. The criteria for service connection for RLS have been met. 38 U.S.C. §§ 1110, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

9. The criteria for service connection for weakness and lack of coordination of the right leg have been met. 38 U.S.C. §§ 1110, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

10. The criteria for service connection for weakness and lack of coordination of the left leg have been met. 38 U.S.C. §§ 1110, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

11. The criteria for service connection for sleep apnea have been met. 38 U.S.C. §§ 1110, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.303, 3.307, 3.309.

12. The criteria for service connection for major depressive disorder have not been met. 38 U.S.C. §§ 1110, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from October 1995 to February 1996, February 2003 to May 2004, and from July 2011 to January 2012. Significantly, this included service in the Southwest Asia theater of operations. He also appears to have had Reserve service between and after his periods of active service.

The Board of Veterans’ Appeals (Board) notes that the decisions on appeal were issued in March 2019. Thereafter, the appellant elected to appeal the rating decisions to the Board using the “direct review” process. The claim is now ready for adjudication.

Increased Rating

Disability evaluations are determined by the application of the facts presented to VA’s Schedule for Rating Disabilities (Rating Schedule) at 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.321 (a), 4.1.

Where the question for consideration is the propriety of the initial evaluation assigned, consideration of the medical evidence since the effective date of the award of service connection and consideration of the appropriateness of a “staged” rating are required. See Fenderson v. West, 12 Vet. App. 119, 125-26 (1999). VA adjudicators must consider whether to assign different ratings at different times during the rating period to compensate the Veteran for times when the disability may have been more severe than at others. The Court since has extended this practice even to established ratings, not just initial ratings. See Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007).

1. A disability rating greater than 50 percent for PTSD is denied.

By way of history, the Veteran submitted an initial claim for service connection for PTSD in September 2007 and, by rating decision dated in June 2008, the Agency of Original Jurisdiction (AOJ) granted service connection for PTSD, assigning a 30 percent disability rating effective September 24, 2007. This 30 percent rating was continued in a January 2011 rating decision. The Veteran submitted the current claim for an increased rating for his PTSD in June 2018 and, by rating decision dated in March 2019, the AOJ increased the Veteran’s disability rating for PTSD from 30 to 50 percent disabling. The Veteran appealed this decision.

The Veteran’s PTSD is currently rated under DC 9411 as 50 percent disabling. Pursuant to DC 9411, a 50 percent rating is assigned when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped, speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. 

A 70 percent rating is warranted when there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near- continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and the inability to establish and maintain effective relationships. 

A 100 percent rating is warranted if there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; gross inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation or own name. 38 C.F.R. § 4.71a, DC 9400, General Rating Formula for Mental Disorders.

Symptoms listed in VA’s general rating formula for mental disorders are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). 

According to the applicable rating criteria, when evaluating a mental disorder, the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the Veteran’s capacity for adjustment during periods of remission must be considered. In addition, the rating must be based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner’s assessment of the level of disability at the moment of the examination. Further, when rating the level of disability from a mental disorder, the extent of social impairment is considered, but a rating cannot be assigned solely on the basis of social impairment. 38 C.F.R. § 4.126.

Evidence relevant to the current level of severity of the Veteran’s PTSD includes a VA psychiatric examination report dated in October 2018. During the October 2018 VA examination, the examiner continued a diagnosis of PTSD. Significantly, the examiner found that the Veteran’s PTSD resulted in occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care, and conversation. 

The Veteran had been married for approximately 10 years and had one biological daughter, age 8, from this marriage. He denied any problems with his marriage and indicated that he resided in a home with his wife and daughter. He maintained a good relationship with his stepmother, who had raised him from the age of 13, as well as his father and saw them regularly. He also kept in contact with his siblings but, since they did not live in the area, he did not have a very close relationship with them. He spent most of his time at his gym or house. He did not have any close friends but did socialize at his local VFW four to five times per month. He had been steadily employed in the field of maintenance since 2012 and denied any issues with chronic absences, tardiness, productivity, and/or conflicts with coworkers. He denied any legal problems and/or substance abuse issues.

The VA examiner found that the Veteran’s PTSD resulted in the following symptoms: depressed mood, anxiety, chronic sleep impairment, flattened affect, and difficulty in establishing and maintaining effective work and social relationships. On behavioral observation, the Veteran’s grooming was appropriate. He demonstrated relaxed motor activity and was cooperative during the examination. Rapport was easily established. The Veteran’s speech and volume were at normal rates and his attention/concentration were intact. He maintained appropriate eye contact. His affect was restricted and his mood was depressed. The Veteran demonstrated average to above average intellectual functioning. His thought processes were linear and he did not display any perceptional issues/psychotic features. There were no reports or current intentions of either suicide or homicide. 

The Veteran also submitted October 2018 private psychiatric and disability benefits questionnaire (DBQ) reports from Dr. R.J.O. These reports show diagnoses of PTSD as well as major depression. Significantly, in the DBQ, Dr. R.L.O. found that the Veteran’s PTSD resulted in occupational and social impairment with reduced reliability and productivity due to the following symptoms: depressed mood; anxiety; suspiciousness; panic attacks more than once a week; chronic sleep impairment; mild memory loss, such as forgetting names, directions, or recent events; flattened affect; difficulty in understanding complex commands; impaired judgments; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships; difficulty adapting to stressful circumstances, including work or a work like setting; intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene.

Also of record are VA treatment records dated through October 2018. These records show findings similar to those noted in the October 2018 VA and private examination reports. 

Based on these findings, the Board finds that the evidence of record does not substantiate an evaluation greater than 50 percent. The evidence does not demonstrate that the Veteran’s service-connected PTSD is productive of occupational and social impairment with deficiencies in most areas or an inability to establish and maintain effective relationships. The evidence of record shows that the Veteran maintains a good relationship with his wife of 10 years, his daughter, and his parents. Also, the Veteran has had steady, full-time employment during the course of this appeal and there is no indication that the Veteran’s psychiatric symptoms significantly affect his employment.

Overall, the totality of the evidence reflects symptoms warranting no more than a 50 percent rating under the applicable criteria. There is no evidence of such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene, or other symptoms on par with the level of severity contemplated by these symptoms in the higher rating criteria. Rather, his symptoms are more in line with those at the 50 percent level – namely occasional panic attacks and disturbances of motivation and mood. In sum, the Board concludes that the Veteran’s PTSD is not manifested by symptomatology that nearly approximates the criteria for the next higher evaluation under DC 9411.

2. A disability rating greater than 20 percent for lumbar strain is denied

By way of history, the Veteran submitted an initial claim for service connection for a back disorder in September 2007 and, by rating decision dated in June 2008, the AOJ granted service connection for lumbar strain, assigning a 10 percent disability rating effective September 24, 2007. Subsequently, by rating decision dated in January 2011, the AOJ increased the Veteran’s disability rating for lumbar strain from 10 to 20 percent disabling effective August 13, 2010. The Veteran submitted the current claim for an increased rating for his lumbar strain in June 2018 and, by rating decision dated in March 2019, the AOJ continued the 20 percent disability rating. The Veteran then appeal this decision.

Back disabilities may be evaluated under either of two general rating formulas. One applies to intervertebral disc syndrome (IVDS), and is based upon the duration of incapacitating episodes. The other general rating formula involves the General Rating Formula for Diseases and Injuries of the Spine.

Under the General Rating Formula for Diseases and Injuries of the Spine, a 10 percent rating will be assigned for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent of more of height.

A 20 percent rating is assigned for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis.

A 40 percent rating requires evidence of forward flexion of the thoracolumbar spine to 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating will be assigned with evidence of unfavorable ankylosis of the entire thoracolumbar spine. A 100 percent rating requires evidence of unfavorable ankylosis of the entire spine.

Pertinent to this appeal, Note (1) of the rating schedule indicates that the agency is to evaluate any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, separately, under an appropriate diagnostic code. Also, from Note (5): For VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis.

Alternatively, the Formula for Rating IVDS Based on Incapacitating Episodes provides that a 10 percent rating is warranted when there are incapacitating episodes having a total duration of at least one week but less than two weeks during the past 12 months; a 20 percent rating is warranted when there are incapacitating episodes having a total duration of at least two weeks but less than four weeks during the past 12 months; and a 40 percent rating is warranted when there are incapacitating episodes having a total duration of at least four weeks but less than six weeks during the past 12 months. A 60 percent rating is warranted when there are incapacitating episodes having a total duration of at least six weeks during the past 12 months. An incapacitating episode is defined as a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a, DC 5243, Note (1).

38 C.F.R. § 4.40 notes that disability of the musculoskeletal system is primarily the inability, due to damage or infection of parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. Functional loss may be due to the absence of part or all of the necessary bones, joints, and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion. 38 C.F.R. § 4.40.

38 C.F.R. § 4.45 provides that factors of disability involving a joint reside in reductions of its normal excursion of movements in different planes of motion and therefore, inquiry will be directed to such considerations as weakened movement (due to muscle injury, disease or injury of peripheral nerves, divided or lengthened tendons, etc.); excess fatigability; and incoordination (impaired ability to execute skilled movements smoothly). 38 C.F.R. § 4.45.

The United States Court of Appeals for Veterans Claims (Court) has held that when a diagnostic code provides for compensation based upon limitation of motion, the provisions of 38 C.F.R. §§ 4.40 and 4.45 must also be considered, and that examinations upon which the rating decisions are based must adequately portray the extent of functional loss due to pain “on use or due to flare-ups.” DeLuca v. Brown, 8 Vet. App. 202, 206 (1995).

Also, the Court has held that “to be adequate, a VA examination of the joints must, wherever possible, include the results of the range of motion testing described in the final sentence of” 38 C.F.R. § 4.59. See Correia v. McDonald, 28 Vet. App. 158 (2016). 38 C.F.R. § 4.59 states that “[t]he joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint.” As such, pursuant to Correia, an adequate VA joints examination must, wherever possible, include range of motion testing on active and passive motion and in weight-bearing and nonweight-bearing conditions.

Evidence relevant to the current level of severity of the Veteran’s lumbar strain includes a VA lumbar spine examination report dated in October 2018. During the October 2018 VA examination, the examiner continued a diagnosis of lumbosacral strain. The Veteran reported that his back pain was gradually getting worse. He tried physical therapy, but the exercises made his pain worse. He saw an orthopedic surgeon who started him on Gabapentin about a year earlier which helped with the pain. The pain worsened towards the end of the day. He did crunches instead of sit ups because sit ups hurt. The Veteran reported experiencing flare-ups as well as functional low/functional impairment of the lumbar spine, specifically, he had trouble with activities like tying his shoes and stooping.

Range of motion testing revealed forward flexion to 60 degrees, extension to 15 degrees, right lateral flexion to 15 degrees, left lateral flexion to 20 degrees, right lateral rotation to 20 degrees, and left lateral rotation to 30 degrees. The examiner noted that this loss of motion contributed to a functional loss, described as pain on extension, right lateral rotation, and left lateral rotation. There was no evidence of pain with weight bearing or objective evidence of localized tenderness or pain on palpation of the joints or associated soft tissue of the thoracolumbar spine. 

The Veteran was able to perform repetitive use testing with at least three repetitions and no additional loss of motion. The Veteran was examined immediately after repetitive use over time and neither pain, weakness, fatigability, nor incoordination significantly limited functional ability with repeated use over a period of time. Similarly, the Veteran was examined during a flare-up and neither pain, weakness, fatigability, nor incoordination significantly limited functional ability with flare-ups.

There was no guarding or muscle spasm of the thoracolumbar spine. Additional factors included interference with sitting. Muscle strength testing was normal and there was no muscle atrophy. Reflex examination of the knees and ankles was hypoactive. Sensory examination was normal with the exception of the left upper anterior thigh and right lower leg/ankle. Straight leg raising test was negative. There was no radiculopathy and no ankylosis of the spine or any other neurologic abnormalities. The Veteran did not have IVDS and did not use an assistive device to aid in locomotion. There was no functional impairment of an extremity such that no effective function remained, other than that which would be equally well served by an amputation with prosthesis. There were no other pertinent physical findings, to include scars. The examiner noted that the Veteran’s lumbar spine disorder impacted has ability to work. Specifically, it was noted that the Veteran was limited in stooping and lifting. 

With regard to Correia, the examiner wrote that there was no evidence of pain on passive range of motion testing and no evidence of pain when the joint was used in non-weight bearing.

Also, of record are VA treatment records dated through October 2018. These records show treatment for the Veteran’s lumbar spine but are negative for any incapacitating episodes requiring bedrest by a physician nor any range of motion findings. 

Upon review of the above evidence, the Board finds that a disability rating greater than 20 percent is not warranted because there is no medical evidence of limitation of forward flexion to 30 degrees or less, or evidence of favorable ankylosis of the entire thoracolumbar spine. As above, the October 2018 VA examination report shows flexion to 60 degrees.

While the Veteran reported experiencing flare-ups during the October 2018 VA examination, and, in Sharp v. Shulkin, 29 Vet. App. 26 (2017), the Court stated that flare-ups must be considered, there is no indication that any flare-ups result in additional loss of motion. Furthermore, the guidance on how to evaluate flare-ups has not been particularly clear. As a consequence, it is determined that the holding in Mitchell v. Shinseki, 25 Vet. App. 32 (2011) will be expanded and it is found that flare-ups must be quantifiable and must result in limitation of motion of function beyond that contemplated by the already provided evaluation. Additionally, because there is a regulation addressing the stabilization of ratings, flare-ups must be of such length as to establish that the overall impairment is more severe than currently evaluated. The statements made in this case do not show that any flare-ups have additionally limited function in a quantifiable way, nor do they show that they are of such length or duration that a staged rating would not violate the rule regarding stabilization of ratings. 

In sum, 38 C.F.R. § 4.1 provides that the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illness proportionate to the severity of the several grades of disability. Here, the reports of exacerbation or flare-ups are not quantifiable and not of sufficient duration to warrant a change in evaluation without violating the spirit of Mitchell, 38 C.F.R. § 4.1 and the rule regarding stabilization of ratings.

The Board has also considered whether any other diagnostic codes might serve as a basis for an increased rating. In this regard, DC 5003 addresses degenerative arthritis. However, in this case, the maximum evaluation possible under DC 5003 is 10 percent, as only one major joint or group of minor joints is involved in this claim. Therefore, it does not allow for a higher evaluation. Also, the Veteran has not been diagnosed with IVDS, if he had, the evidence is negative for any incapacitating episodes requiring bedrest by a physician. There are no other applicable codes available for consideration. 

In denying a higher rating for the Veteran’s lumbar spine disability, the Board has considered the Veteran’s statements that his lumbar spine disability is worse, as well as his report of pain. While he is competent to provide evidence regarding matters that can be perceived by the senses, he is not shown to be competent to render medical opinions regarding whether his symptoms meet the next higher rating criteria under VA regulations. 

Such competent evidence concerning the nature and extent of the Veteran’s lumbar spine disability has been provided by the medical personnel who have examined him during the current appeal. The medical findings (as provided in the examination reports and clinical records) directly address the criteria under which this disability is evaluated. 

The specific clinical measures of ranges of motion, including examiners’ findings and opinions regarding additional limitations of motion due to such factors, have been weighed and considered by the Board. Such specific measures and findings are of more probative value in determining specific ranges of motion than are general histories or general descriptions of symptoms of pain or limitations, such as this Veteran’s report of pain and limitation of function. 

Thus, the overall evidence does not show that pain or other factors have resulted in additional functional limitation or limitation of motion (flexion limited to 30 degrees or less, favorable ankylosis of the thoracolumbar spine, or incapacitating episode of at least four weeks, etc.) such as to enable a finding that the disability picture more nearly approximates the next-higher, 40 percent, rating under the General Rating Formula for Diseases and Injuries of the Spine for the any part of the rating period on appeal. 

Despite the Veteran’s contention of a debilitating lumbar spine disability, the disability rating assigned herein indicates a significant impact on his functional ability. Such disability evaluation assigned by VA recognizes his painful motion. The critical question in this case, however, is whether the problems he has cited meet an even higher level under the rating criteria. For reasons cited above, the Board finds they do not. 

The Board has also contemplated whether any separate evaluations are applicable here for additional disability associated with the service-connected lumbar spine disability. Significantly, a March 2019 VA examination addendum report shows that the Veteran also has degenerative joint disease (DJD) of the lumbar spine as well as radiculopathy of the left lower extremity, this report also indicates that the DJD is not related to the service-connected lumbosacral strain and that the Veteran’s radiculopathy is most likely caused by DJD. As such, no additional separate evaluations are warranted for the Veteran’s lumbar spine disability.

3. A compensable disability rating for verrucae vulgaris is denied.

By way of history, the Veteran submitted an initial claim for service connection for a skin disorder in September 2007 and, a July 2008 VA skin examination showed 10 to 12 wart-like nodules on the posterior of the left hand which appeared, clinically, to be verrucae vulgaris, but was not biopsied. By rating decision dated in July 2008, the AOJ granted service connection for verrucae vulgaris, assigning a noncompensable disability rating effective September 24, 2007. The Veteran submitted the current claim for an increased rating for his verrucae vulgaris in June 2018 and, by rating decision dated in March 2019, the AOJ continued a noncompensable rating. The Veteran then appeal this decision.

The Veteran’s verrucae vulgaris is rated under 38 C.F.R. § 4.118, DC 7819. DC 7819 applies to benign skin neoplasms and directs that the disability at issue be rated based on limitation of function.

Evidence relevant to the current level of severity of the Veteran’s verrucae vulgaris includes a VA skin examination report dated in October 2018. During the October 2018 VA examination, the examiner diagnosed eczema and no other skin disability and, in a March 2019 VA addendum opinion, the examiner noted that the Veteran’s dermatitis is not a progression of verruca vulgaris as it is a separate condition. There was no evidence of verruca vulgaris was noted during the exam.

Also of record are VA treatment records dated through October 2018. These records show findings similar to those noted in the October 2018 VA and private examination reports.

Upon review of the above evidence, the Board finds that a compensable disability rating is not warranted for the Veteran’s verruca vulgaris. Significantly, a review of the record shows that the Veteran no longer has a diagnosis of verruca vulgaris or any residuals of this disability. As such, a compensable disability rating is not warranted as there is no limitation of function. 

Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Certain chronic diseases will be presumed related to service if they were noted as chronic in service; or, if they manifested to a compensable degree within a presumptive period following separation from service; or, if continuity of the same symptomatology has existed since service, with no intervening cause. 38 U.S.C. §§ 1101, 1112, 1113, 1137; Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2012); Fountain v. McDonald, 27 Vet. App. 258 (2015); 38 C.F.R. §§ 3.303(b), 3.307, 3.309(a).

A “Persian Gulf veteran” is a veteran who served in the Southwest Asia theater of operations during the Persian Gulf War as defined in 38 C.F.R. § 3.2 and 38 C.F.R. § 3.17(a)(1)(ii) and is eligible for consideration of compensation for certain disabilities due to undiagnosed illnesses. 38 U.S.C. § 1117, 38 C.F.R. § 3.317. 

VA will pay compensation to a Persian Gulf veteran who exhibits objective indications of a qualifying chronic disability, provided that such disability (i) became manifest either during active military, naval, or air service in the Southwest Asia theater of operations, or to a degree of 10 percent or more not later than December 31, 2021; and (ii) by history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis. 38 C.F.R. § 3.317(a)(1). 

A qualifying chronic disability means a chronic disability resulting from any of the following (or any combination of the following): (A) an undiagnosed illness; or (B) a medically unexplained chronic multisymptom illness that is defined by a cluster of signs or symptoms (MUCMI), such as chronic fatigue syndrome (CFS), fibromyalgia or irritable bowel syndrome (IBS). 38 C.F.R. § 3.317(a)(2). In particular, this includes a diagnosed illness without conclusive pathophysiology or etiology that is characterized by overlapping symptoms and signs and has features such as fatigue, pain, disability out of proportion to physical findings, and inconsistent demonstration of laboratory abnormalities. Chronic multisymptom illness of partially understood etiology and pathophysiology are not considered medically unexplained. Pathophysiology and etiology are decisive factors in determining whether an illness is medically unexplained. Thus, an illness can be a MUCMI where either the etiology OR the pathophysiology of the illness is inconclusive. Conversely, a multisymptom illness is not a MUCMI where both the etiology and the pathophysiology of the illness are partially understood. Stewart v. Wilkie, 30 Vet. App. 383 (2018).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

4. Service connection for fibromyalgia, CFS, IBS, tremors of the hands, RLS, and weakness and lack of coordination of the right/left legs is granted.

The Veteran contends that service connection for fibromyalgia, chronic fatigue syndrome, IBS, tremors of the hands, RLS, and weakness and lack of coordination of the right/left legs is warranted. Specifically, he contends that he began experiencing symptoms of these disorders during his military service in the Gulf War and that these symptoms have continued since his discharge from military service.

The Veteran’s service treatment records (STRs) do show complaints suggestive of the claimed disabilities. Specifically, with regard to the Veteran’s first period of service, a January 1996 STR shows complaints of diarrhea. With regard to the Veteran’s second period of active service, an April 2004 STR shows complaints of numbness or tingling in the hands/feet as well as frequent indigestion and an April 2004 report of medical history, the Veteran reported “bone, joint, or other deformity.” With regard to the Veteran’s third period of service, an October 2011 STR shows an impression of gastroenteritis and a December 2011 STR shows complaints of “muscle aches” as well as “swollen, stiff, or painful joints.” While a separation examination from the Veteran’s third period of service is not of record, an April 2012 post-deployment questionnaire shows complaints of “generally feeling weak” “swollen, stiff, or painful joints,” “numbness or tinging in hands or feet,” and “diarrhea, vomiting, or frequent indigestion/heartburn.”

Also, VA and Reserve records dated between the Veteran’s periods of active service show complaints suggestive of the claimed disabilities. Specifically, in an October 2005 VA treatment record, the Veteran reported being seriously ill with gastrointestinal problems on three separate occasions while stationed in Iraq. In a December 2007 VA treatment record, the Veteran was assessed with nausea/ possible GERD (gastroesophageal reflux disease) and intermittent paresthesias/numbness of the LUE (left upper extremity). It was also noted that the Veteran experienced severe fatigue, loss of energy, and getting tired easily. In a March 2008 VA treatment record, the Veteran reported experiencing nausea and difficulty swallowing three to four times per day. In a March 2008 report of medical history, the Veteran reported experiencing “frequent indigestion or heartburn,” “painful shoulder, elbow, or wrist,” as well as “numbness or tingling.” A January 2011 VA treatment record shows complaints of fatigue, vomiting, and “explosive” diarrhea. VA treatment records show a diagnosis of GERD as early as April 2014.

The Veteran filed a claim of service connection for fibromyalgia, chronic fatigue syndrome, IBS, tremors of the hands, RLS, and weakness and lack of coordination of the right/left legs in June 2018. In connection with this claim, the Veteran submitted a June 2018 statement from Dr. M.T. Significantly, Dr. M.T. noted diagnoses of fibromyalgia, chronic fatigue syndrome, IBS, tremors of the hands, RLS, and weakness and lack of coordination of the right/left legs and opined that such disabilities are as likely as not directly and causally related to Gulf War Syndrome per the provisions published in the Gulf War VA Spring 2015 Newsletter (www.publichealth.va.gov). Dr. M.T. also opined that such disabilities are as likely as not directly and causally related to the Veteran’s military service as they are permanent conditions which had their onset during the Veteran’s deployment to Desert Storm and have persisted to the present.

The Veteran was afforded several VA examinations in October 2018. Significantly, VA fibromyalgia, CFS, and central nervous system examinations are negative for diagnoses of fibromyalgia, chronic fatigue syndrome, tremors of the hands, RLS, and/or weakness and lack of coordination of the right/left legs. The VA intestines examination shows a diagnosis of IBS, noting an onset in 2003 (during the Veteran’s second period of active service) but does not provide an etiology opinion. A VA Gulf War examination also shows a diagnosis of IBS with an onset in 2003 but includes a negative nexus opinion with regard to a possible undiagnosed Gulf War illness since IBS is a known diagnosis. 

Unfortunately, there is no adequate VA medical opinion of record that addresses whether the Veteran meets the criteria for diagnoses of fibromyalgia, chronic fatigue syndrome, IBS, tremors of the hands, RLS, and/or bilateral leg disorders and, if so, whether such are related to the Veteran’s military service. Significantly, with regard to the fibromyalgia, chronic fatigue syndrome, tremors of the hands, RLS, and bilateral leg issues, the October 2018 VA examiners did not address the June 2018 statement from Dr. M.T. showing diagnoses of the claimed conditions. With regard to the IBS issue, the October 2018 VA intestines and Gulf War examinations show a diagnosis of IBS beginning in 2003 but do not provide an etiology opinion. While the June 2018 medical opinion from Dr. M.T. does not contain a detailed rationale, it does link the Veteran’s claimed disorders to his military service and is consistent with the Veteran’s service treatment records and subsequent lay statements.

At this time, the Board declines to remand for an additional opinion as such would resemble a fishing expedition for negative evidence, which, in view of the available medical evidence, is not necessary. Indeed, obtaining such additional evidentiary development in this instance would only result in additional delay with no benefit to the appellant. Sabonis v. Brown, 6 Vet. App. 426 (1994); VAOPGCPREC 5-04, 69 Fed. Reg. 59,989 (2004). As such, the Board will resolve reasonable doubt in favor of the Veteran and find that he has diagnoses of fibromyalgia, chronic fatigue syndrome, IBS, tremors of the hands, RLS, and weakness and lack of coordination of the right/left legs and that such are due to the Veteran’s military service. Therefore, service connection for fibromyalgia, chronic fatigue syndrome, IBS, tremors of the hands, RLS, and weakness and lack of coordination of the right/left legs is warranted.

5. Service connection for sleep apnea is granted.

The Veteran contends that service connection for sleep apnea is warranted. Specifically, he contends that he began experiencing symptoms of sleep apnea during his military service in the Gulf War and that these symptoms have continued since his discharge from military service.

The Veteran’s STRs are negative for a diagnosis of sleep apnea but do show complaints suggestive of sleep apnea. Specifically, a December 2011 STR shows “problems sleeping or still feeling tired after sleeping.” While a separation examination from the Veteran’s third period of service is not of record, an April 2012 post-deployment questionnaire also shows “problems sleeping or still feeling tired after sleeping.” 

Also, VA and Reserve records dated between the Veteran’s periods of active service show complaints suggestive of the claimed disabilities. Specifically, in an October 2005 VA treatment record, the Veteran reported experiencing sleep difficulties with nightmares and night sweats and he was prescribed medication for this. Subsequent VA treatment records continue to show sleep problems. 

Post-service VA treatment records show that the Veteran underwent a sleep study in June 2014 and was subsequently diagnosed with moderate obstructive sleep apnea.

The Veteran filed a claim of service connection for sleep apnea in June 2018. In connection with this claim, the Veteran submitted a June 2018 statement from Dr. M.T. Significantly, Dr. M.T. noted a diagnosis of sleep apnea and opined that such disability is related to the Veteran’s active service as it had its onset during his deployment to Desert Storm and has persisted to the present.

The Veteran was afforded a VA sleep apnea examination in September 2018. Significantly, the examiner noted a diagnosis of obstructive sleep apnea beginning in June 2014 and opined that the Veteran’s sleep apnea was less likely than not related to the Veteran’s military service. As rationale for this opinion, the examiner noted the Veteran’s in-service symptoms of sleep disturbance but noted that these symptoms can be attributed to other factors and that there was no documented continuity. 

Upon review of the evidence, the Board finds that service connection for sleep apnea is warranted. As an initial matter, the Board finds that the Veteran has a current diagnosis of sleep apnea. Furthermore, the Board finds that the statements of the Veteran regarding the onset of his sleep apnea symptomatology, to include sleep disturbances during his military service as well as his continued symptoms since service, which ultimately resulted in a confirmed diagnosis of sleep apnea in approximately June 2014, are both competent and credible. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (lay evidence can be competent and sufficient to establish a diagnosis of a condition when lay testimony describing symptoms at the time supports a later diagnosis by a medical professional). Finally, the June 2018 statement from Dr. M.T. provides a medical nexus between the Veteran’s in-service sleep disturbances and his current diagnosis of sleep apnea. 

While the September 2018 VA examiner provided a negative nexus opinion, the Board notes that this opinion is inadequate because it does not explain what other factors the Veteran’s in-service sleep disturbances were related to. The September 2018 VA opinion is also based on a flawed rationale as it is based on the absence of continuity of symptoms. Significantly, the Veteran’s statements of continued sleep problems since service is credible evidence of continuity. As such, the Board will resolve reasonable doubt in favor of the Veteran and find that the Veteran’s sleep apnea began during his military service. Therefore, service connection for sleep apnea is warranted.

6. Service connection for major depressive disorder is denied.

The Veteran contends that service connection for major depressive disorder is warranted. Specifically, he contends that he began experiencing depression during his military service in the Gulf War and that these symptoms have continued since his discharge from military service. 

As above, the Veteran is currently service connected for PTSD and is being compensated for several psychiatric symptoms associated with his PTSD, including depressed mood. An October 2018 VA psychiatric examination report shows a diagnosis of PTSD (but not a diagnosis of major depressive disorder) and that the Veteran experiences a depressed mood due to his PTSD. However, October 2018 private psychiatric and DBQ reports from Dr. R.J.O. show diagnoses of PTSD as well as major depression. 

An addendum opinion to the October 2018 VA psychiatric examination report was obtained in March 2019. Significantly, the examiner found that based on the records reviewed and the examination of the Veteran, the examiner opined that it was less likely than not that Veteran currently meets the criteria for major depressive disorder. As rationale for this opinion, the examiner noted that the Veteran’s STRs are silent for mental health treatment for depression. Significantly, July and August 2011 STRs show “[n]o depression in the past two weeks, no anhedonia in the past two weeks, and ability to communicate effectively.” The examiner also noted that while the October 2018 private report from Dr. R.J.O. shows a diagnosis of major depression, a February 2017 VA treatment record noted that a previous diagnostic impression of major depressive disorder was “in remission” as a VA mental health screening for depression, also in February 2017, noted negative results. The Board finds this opinion probative and more persuasive on the issue of a separate diagnosis for depression than the private opinion, as it is fully explained and adequately supported. The private opinion, on the other hand, merely notes the diagnosis without reference to diagnostic criteria in support of it. 

While the Veteran contends that he experiences depression, the probative medical evidence of record does not show a current separately diagnosed disability of major depressive disorder. Also, while the Veteran believes he has a current diagnosis of major depressive disorder, he is not competent to provide a diagnosis in this case. The issue is medically complex, as it requires specialized medical education/knowledge of the interaction between multiple organ systems in the body/the ability to interpret complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). Consequently, the Board gives more probative weight to the competent medical evidence. 

Accordingly, for the reasons stated above, the Board finds that the preponderance of the evidence is against the claim for service connection for major depressive disorder. As the evidence is not in relative equipoise, the benefit of the doubt rule does not apply. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

REASONS FOR REMAND

7. The claim of entitlement to service connection for chronic rhinitis and/or sinusitis is remanded.

The issue of entitlement to service connection for chronic rhinitis and/or sinusitis is remanded to correct a duty to assist error that occurred prior to the March 2019 rating decision on appeal. 

By way of history, the Veteran’s September 1995 enlistment examination from his first period of service shows normal sinuses and, in a September 1995 report of medical history, the Veteran denied sinusitis. A January 1996 STR from the Veteran’s first period of service shows that he was treated for sinus drainage and diagnosed with an upper respiratory infection. He was subsequently diagnosed with allergic rhinitis in September 1997, in between his first and second periods of service and diagnosed with sinusitis in October 2004, in between his second and third periods of service.

The Veteran filed a claim of service connection for rhinitis/sinusitis in June 2018. In connection with this claim, he submitted a June 2018 statement from Dr. M.T. Significantly, Dr. M.T. noted a diagnosis of chronic sinusitis as well as respiratory deficiency to include congestion of the maxillary sinuses (confirmed by transillumination of the maxillary sinuses) with difficulty breathing, facial pain, and coughing. It was noted that the Veteran had a very poor aerobic capacity due to the progressive condition which began with his Gulf War service. Dr. M.T. then opined that the Veteran’s chronic sinusitis is as likely as not directly and causally related to Gulf War Syndrome per the provisions published in the Gulf War VA Spring 2015 Newsletter (www.publichealth.va.gov). Dr. M.T. also opined that such disability is as likely as not directly and causally related to the Veteran’s military service as it is a permanent condition which had its onset during the Veteran’s deployment to Desert Storm and has persisted to the present.

The Veteran was afforded a VA sinuses examination in October 2018. Significantly, the examiner noted diagnoses of chronic sinusitis (2018) and allergic rhinitis (2012). However, no etiology opinion was provided. 

In a March 2019 addendum, the VA examiner opined that the Veteran’s allergic rhinitis (which clearly and unmistakably existed prior to service) was less likely as not aggravated beyond its natural progression by the upper respiratory complaints during service. As rationale for this opinion, the examiner wrote that he could not find any evidence that the claimed condition presented a clinical pattern worse than the expected clinical course during his periods of service from February 2003 to May 2004 and again from July 2011 to January 2012.

Unfortunately, the Board finds that the March 2019 VA medical opinion is inadequate as it is based on factual inaccuracy. Significantly, the March 2019 VA opinion does not appear to consider the Veteran’s first period of service from October 1995 to February 1996 and/or the STRs associated with this period of service. Furthermore, the March 2019 VA opinion does not appear to consider the September 1997 diagnosis of allergic rhinitis and/or the October 2004 diagnosis of sinusitis. Therefore, on remand, an addendum opinion should be obtained which considers the Veteran’s first period of service and the STRs associated with this period of service from October 1995 to February 1996 as well as the subsequent diagnoses of allergic rhinitis/sinusitis in determining whether the Veteran’s chronic rhinitis/sinusitis is etiologically related to his active service.

The matter is REMANDED for the following action:

Return the claims file to the October 2018/March 2019 VA examiner for an addendum opinion. If the examiner who drafted the October 2018/March 2019 opinion is unavailable, the opinion should be rendered by another appropriate medical professional. The need for another examination is left to the discretion of the medical professional offering the addendum opinion. 

Following a review of the claims file, the reviewing examiner is requested to provide an opinion as to whether it is at least as likely as not that the Veteran’s chronic rhinitis and/or sinusitis was incurred during his military service. In so opining, the examiner’s attention is directed to the Veteran’s first period of service from October 1995 to February 1996 and the STRs associated with this period of service (specifically the September 1995 enlistment examination which shows normal sinuses, the September 1995 report of medical history wherein the Veteran denied sinusitis, and the January 1996 STR which shows that the Veteran was treated for sinus drainage and diagnosed with an upper respiratory infection) and the subsequent diagnoses of allergic rhinitis in September 1997 (in between his first and second periods of service) and sinusitis in October 2004 (in between his second and third periods of service). See VBMS, document labeled STR - Medical, receipt date 9/17/2014, pages 20 and 22; VBMS, document labeled STR - Medical, receipt date 10/16/2000, pages 13 and 15; VBMS, document labeled Medical Treatment Record – Government Facility, receipt date 9/24/2007, page 29.

The examiner is asked to provide the underlying reasons for all opinions expressed, and is reminded that the term “as likely as not” does not mean “within the realm of medical possibility,” but rather that the evidence of record is so evenly divided that, in the examiner’s expert opinion, it is as medically sound to find in favor of the proposition as against it.

 

 

Bethany L. Buck

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board April Maddox, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.